REDMANN, Chief Judge,
dissenting.
Comparison of the will — especially its signature, whose being traced twice is evident to the naked eye — with the admitted specimens of decedent’s handwriting demonstrates that the will is a forgery.
Yet it is not, of course, the burden of the opponents of a questioned will to prove forgery; rather, as La.C.C.P. 2903 expressly declares, it is the burden of the will’s proponent to prove its genuineness.
The trial judge manifestly erred in his two-line obiter dictum finding (in the course of declaring the will invalid for lack of testamentary capacity) that the will is in decedent’s handwriting — implying that proponent had carried the burden of proof.
The only conceivable explanation for that finding by the trial judge is that, instead of himself comparing the handwritings, he merely relied on the conclusion expressed by a witness accepted as an expert — a conclusion unsupported by any underlying factual assertions save that the expert had compared Hs and Ls in Henry and Lyons and concluded that the Ls (not the Hs and Ls) “were in range of [decedent’s] writing.”
A forgery is, by definition, a deliberate attempt to create handwriting that looks like the imitated writing. Thus the fact that there is some similarity to the imitated writing is always present in the case of a forgery. That Ls (or Hs and Ls) in this will *233 are similar to decedent’s does not prove, in the face of the many and consistent dissimilarities, that this will was written by decedent.
Perhaps the worst thing about this will is its signature. The naked eye can see that it consists of two “signatures,” one in light ballpoint ink over which there is traced a second, in visibly different-colored, darker, liquid ink (the same -as that used for the body of the will). The signature appears to have been first traced onto the paper using the lighter ink, and then traced over in the heavier ink. The lighter ink is often visible to the naked eye, because not always covered by the darker ink: in the bottom half of the first downstroke and under the cross-stroke of the H, in the loop of the e, on the underside of the first arch of the n, almost throughout the L and y, on the underside of the second arch of the second n, and under the final stroke of the s. With the slight enlargement of a two-power magnifying glass, the ballpoint writing is visible elsewhere and, in the fluorescent lighting of the writer’s office, the ballpoint ink has a reddish east to it that is not present elsewhere in the will (not even in the written-over word “with” at the end of the ninth line, apparently written over as if the pen’s two nibs had spread apart, or perhaps the pen had been turned, as appears elsewhere in the will, at an angle, so that ink flow was interrupted). That reddish cast is visible through the darker ink when it covers the lighter ink, and it is present throughout the signature, from start to finish — including in the unprecedented double line in the bottom of the H’s initial downstroke (apparently an error made in the ballpoint tracing that was repeated in the dark ink overtracing, to conceal it).
Photocopies of the known samples of decedent’s writing and of the will are attached as an appendix.
A lay witness called attention to the difference between the will’s Hs and Ws and those of the decedent’s writing.
The decedent’s Ws (from the 1951 letter, save the last, from the 1980 Christmas card):
[[Image here]]
The will’s Ws:
[[Image here]]
Every one of the 11 known sample Ws has center strokes (where, in effect, double Us join to form a W) very much higher than the side strokes — perhaps twice as high or higher (as if a double J, with the second J backwards). There are ten Ws in the will, and not a single one has its center strokes higher than the side strokes. Every one of decedent’s six Ws beginning a word has a circle-like stroke at its start, and not a *234 one of the four initial Ws in the will does. Not a one of decedent’s eight non-terminal Ws joins itself to the letter following it, while every one of the will’s four non-terminal Ws does.
The Hs are not here photocopied (although they may be inspected in the appended photocopies of the entire documents), because proponent’s expert said he compared the Hs (and Ls, “from the writing of Henry and the word Lyons,” that is, from the signatures or other instances of “Henry” and “Lyons”). The point of this dissent is not to argue with what that expert said, but to argue that he did not say enough to constitute proof of a will attacked as a forgery; and it was proponent’s burden to prove that the will was written, dated and signed by decedent.
There are many other repeated discrepancies, a few of which are here illustrated.
Decedent’s personal pronoun “I” (six from the letter, one from the card) is unfailingly a small i, half a line tall, with upstroke and downstroke never crossing:
[[Image here]]
The will’s “I” is a small 1 with a dot above it, a full line tall, with upstroke and down-stroke crossing near the bottom to form a clear loop:
[[Image here]]
Decedent’s small f, on its return from its below-the-line loop, barely touches its vertical stroke before returning to a rightward course:
[[Image here]]
The will’s f, on its return from its below- its vertical stroke before returning right-the-line loop, proceeds far to the left across ward:
[[Image here]]
Decedent’s capital B is made with a single cursive stroke, down then looping to the left and back up across its top:
[[Image here]]
*235 The will’s capital B is made with two strokes, as if made beginning from the bottom of the line and completed, and then adding a second vertical stroke, a straight line:
[[Image here]]
Decedent’s number 8 is made with a single cursive stroke:
[[Image here]]
The will’s 8 is made with two strokes, one in the form of an S and the second a straight line joining its ends:
[[Image here]]
There are other discrepancies, such as the capital S and the small d, p, r and y. (The r gave the will-writer much trouble: the will’s first “December” and last “from” have their r written first without decedent’s characteristic circular stroke at its left top, and then the pen returns to make an evident addition of that circular stroke; and in two places that circular stroke is first made, but then the writer’s own habit took over, for he added after the circle another full but uncircled r — making the words appear to be “propeerty” and “feree.”)
Against this mass of evidence from the will and the known samples of decedent’s handwriting in evidence, proponent offered nothing save the undetailed conclusion of himself and a niece of decedent (whose known self-interest was to defeat rather than support the will) that the will was in decedent’s handwriting, and the virtually undetailed testimony of a handwriting expert. That expert testified that he
“took out the incident [sic] writing of Henry and the word Lyons.... I then mounted the H and capital L on the line in a descent [sic; descending?] order of size .... I was able to find instant [sic; incidence? coincidence?] or near instant L within range. All the L’s were in range of his writing in the L writing and I concluded that these were written by the same hand.”
That expert does not discuss a single other letter or characteristic of decedent’s writing or of the will (and he does not even testify that the Hs appear to be written by the same hand).
It must be said that opponents had employed some purported handwriting expert, yet did not call him or her to testify. But the only inference from failing to call that possible witness is that that witness (of undisclosed qualification, if any; only two persons claiming to be handwriting experts are listed from the New Orleans area in the current classified telephone directory) would not have testified that the will was written in another hand.
But proponent’s evidence and that inference do not come close to overcoming the evidence from the will and the known specimens of decedent’s writing-^do not come close to proving that the will was written, dated and signed by decedent.
The judgment appealed from, refusing probate to this will on other grounds, should be affirmed on the ground that proponent did not bear the burden of proving that the will was “written, dated and signed by the hand of the testator,” C.C. 1588.
*236 [[Image here]]
*237 [[Image here]]
*238 [[Image here]]
*239 [[Image here]]